**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                        :
**DOMENICO GULLACE,**                  :
                                                        :
Plaintiff,                                          :
                                                        :         Civ. Action No.: 15-7630 (FLW)
v.                                                    :
                                                        :                 **OPINION**
**CAROLYN W. COLVIN, ACTING**      :
**COMMISSIONER OF SOCIAL**         :
**SECURITY**,                                 :
                                                        :
Defendant.                                     :
_____:

**WOLFSON, United States District Judge:**

      Domenico Gullace ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Defendant" or "Commissioner"), who denied Plaintiff disability insurance benefits ("DIB") under Title II of the Social Security (the "Act"), as well as supplemental security income ("SSI") under Title XVI of the Act. After reviewing the administrative record, the Court finds that the Administrative Law Judge's ("ALJ") determinations were based on substantial evidence and, accordingly, affirms the decision.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Plaintiff was born on November 19, 1960, and was 49 years old on his alleged disability onset date of July 1, 2010. See Administrative Record ("A.R.") at 30. On January 25, 2012, Plaintiff filed applications for both DIB and SSI. Id. at 168-176. The two applications were ultimately denied, and Plaintiff requested reconsideration, which was also denied. Id. at 64-85. Plaintiff then appealed and requested a hearing before an ALJ. Id. at 99-100. On September 17,

2013, the first hearing was held before ALJ Richard West.  Id. at 20, 25.  After the hearing, the ALJ proffered interrogatories to a vocational expert, Rocco Meola ("Meola"), and based on his responses, Plaintiff requested a supplemental hearing, which was held on April 11, 2014.  Id. at 51-53.  During that hearing, Plaintiff's counsel was permitted to cross-examine Meola.  Id.  On May 7, 2014, the ALJ issued his written decision, finding that Plaintiff was not completely disabled.  Id. at 10-20.  Plaintiff appealed that decision to the Appeals Council, which denied his request for review on August 24, 2015.  Id. at 1-6.  Having exhausted his administrative remedies, Plaintiff filed his Complaint in the instant action.

a.      **Review of Function and Work Reports**

With respect to his work history, Plaintiff was a chef at a catering company from 2001 to 2004.  Id. at 204.  He then worked as chef at a bar and grill restaurant until 2006.  Id.  Between 2006 and 2008, Plaintiff owned his own construction company where he remodeled homes.  Id.  According to Plaintiff, all of these jobs required him to stand and walk for the vast majority of the workday.  Id. at 204-210.  Nevertheless, while Plaintiff does not state what jobs he performed from 2008 through July 1, 2010, his alleged disability onset date, it appears that Plaintiff continued to work part-time jobs.  See, e.g., id. at 259 (Plaintiff's doctor noted that, in February 2012, Plaintiff reported that he was working "[s]ummer jobs due to loss of regular job.").

In his function report, when asked to describe his normal day at that time, Plaintiff stated: "Go shopping for food try to see if I can exercise and see if I can find alternative work situation." Id. at 196.  In addition, Plaintiff explained that he does not have any difficulties cooking and performing housework, such as laundry, and he enjoys playing chess or cards with friends and going on walks.  Id. at 197-198.  However, Plaintiff stated that he experiences difficulty standing and walking "due to numbness in feet when the nerves flair [up]...." Id. at 201.  Plaintiff clarified

2

that he can walk "1 mile maybe more" before he needs to stop and rest, but he can usually resume walking within ten minutes.  Id.

b.     **Review of Objective Medical Evidence**

1.     **Records from 2010**

According to the medical records, Plaintiff saw Dr. Mahmoud Aly, M.D. ("Dr. Aly") in January 2010.  Id. at 265.  Dr. Aly observed that Plaintiff was 270 pounds and had high blood pressure.  Id.  Dr. Aly reported that Plaintiff experienced hypertension and was taking various medications, including Lopressor, to treat that ailment.  Id.  Dr. Aly recommended weight loss to Plaintiff.  Id.  In October 2010, Plaintiff went to Dr. Aly again, and the doctor noted that Plaintiff had lost six pounds and his blood pressure was lower than before.  Id. at 264.  Indeed, Dr. Aly observed that Plaintiff's hypertension was "well controll[ed]," and that he was taking Glucophage to treat his diabetes mellitus.  Id.

2.     **Records from 2011**

In February 2011, Plaintiff went to Dr. Aly for a physical, and the doctor observed that "[t]he patient is [] well developed, has normal nutrition, has normal station and normal gait."  Id. at 257.  Dr. Aly wrote that "[t]here is no numbness in the upper extremity," and "[s]welling is not found in the lower extremity joints."  Id. at 258.  The doctor stated that Plaintiff suffered from diabetes mellitus.  Id.  In August 2011, Plaintiff visited Dr. Aly, who reported: "BP undercontrol [sic] on lasix, lisinopril, lopressor, norvasc.  Pt doing well.  No blood works done."  Id. at 262.  In addition, the doctor observed that Plaintiff was taking Glucophage for his diabetes mellitus.  Id. at 263.  However, the doctor specifically stated, "NO weight loss yet."  Id.

3.     **Records from 2012**

3

In February 2012, Plaintiff went to Dr. Aly for a routine visit, and the doctor stated that Plaintiff was "[d]oing well.  Summer jobs due to loss of regular job.  BP under control…. Weight loss."  Id. at 259.  Dr. Aly stated that Plaintiff suffered from hypercholesterolemia.  Id. at 260.  In addition, the doctor noted that Plaintiff was taking Glucophage to treat his diabetes mellitus, but he referred Plaintiff to an endocrinologist to adjust his dosage of the medication.  Id.  While his station and gait were normal, Dr. Aly reported that Plaintiff complained of "numbness and pain on feet.  Right worse than left."  Id.  The next month, Plaintiff visited Dr. Aly again, complaining of hypertension and uncontrolled diabetes mellitus.  Id. at 384.  In pertinent part, the doctor noted that Plaintiff suffered "chronic [right] foot pain, numbness, tingling, making him unable to walk."  Id.  Dr. Aly recommended that Plaintiff consult with a neurologist.  Id.

From June through September 2012, Plaintiff visited Gargi Dhar, M.D. ("Dr. Dhar"), an internist, on six separate occasions.  See id. at 374-356.  In June 2012, Dr. Dhar noted that Plaintiff's diabetes "has been managed with oral medications," but he experienced diabetic neuropathy, which caused "chronic feet numbness and tingling for years."  Id. at 374.  In order to ameliorate those symptoms, Dr. Dhar started Plaintiff on Gabapentin and provided him a referral to a neurologist.  Id. at 375-376.  Plaintiff also complained of hypertension, which caused Dr. Dhar to adjust his dosage of Norvasc.  Id.

In July 2012, Plaintiff visited Dr. Dhar because of his "diabetes, hyperlipidemia and hypertension," and Dr. Dhar determined that Plaintiff should increase his dosage for the following medications: (i) Metformin for diabetes; (ii) Lipitor for hyperlipidemia; and (iii) Gabapentin for neuropathy.  Id. at 370.  The doctor also recommended that Plaintiff consume a diet with less fatty foods, as well as see a nutritionist.  Id.  In August 2012, at a visit with Dr. Dhar, Plaintiff complained about his diabetes and hypertension, but, because his ailments were being well-

managed, Dr. Dhar only recommended increasing the dosage of Gabapentin to help with the sensations of numbness and tingling.  Id. at 365-366.   Later that month, Plaintiff visited Dr. Dhar for his hypertension, and the doctor determined that Plaintiff should stop taking Lasix and start taking Hydrochlorothiazide.  Id. at 360-362.

In September 2012, Plaintiff, again, visited Dr. Dhar, who stated that Plaintiff "presents with hypertension, diabetes and hyperlipidemia." Id. at 356.  However, the doctor told Plaintiff to continue with his current medicine regime, since Plaintiff appeared to be normal and his blood pressure was "controlled." Id. at 357.   Later that month, Plaintiff visited Amy Gesualdi, D.P.M. ("Dr. Gesualdi"), a podiatrist.  Id. at 360; see id. at 271.  Dr. Gesualdi noted that Plaintiff experienced foot pain, and she stated: "pt present for diabetic foot exam and bil foto pain and numbness.  Neuropathic pain began 6 years ago.  he is currently taking gabapentin and is scheduled to see neurology in november." Id. at 360.  Dr. Gesualdi observed that Plaintiff had some swelling in his extremities.  Id.  In addition to continuing to take his medication, the doctor recommended "rx compression stocking… [since] this will help varicose veins and may help swelling at tarsal tunnel." Id.

In October 2012, Plaintiff visited Dr. Dhar, who determined that Plaintiff presented hyperlipidemia and abnormal liver enzyme levels.  Id. at 351.  In addition, the doctor noted that Plaintiff also suffered from hypertension.  Id.  Nevertheless, Dr. Dhar only recommended that Plaintiff avoid fatty foods and alcohol.  Id. at 352.  Later that month, Plaintiff visited Shan Chen, M.D., Ph.D. ("Dr. Chen"), a neurologist, who stated that "Mr. Gullace is a 51 year old man who came to our neuromuscular clinic for the first visit for the evaluation of bilateral foot pain and numbness." Id. at 299.  She further noted:

> He started to notice the numbness and tingling in his feet four to five years ago. The numbness progressed two years ago mainly the dorsum of his feet and became

constant.  His symptoms got worse with prolonged standing and walking.  On and off he stated to have tingling sensations in his finger tips.  He put his feet in cold water for temporal [sic] relief.  He feels that he stands in the sand.  The muscles in his legs felt stiff.

Id.  Dr. Chen also reported that Plaintiff "was diagnosed to have diabetes… [but his] glucose level is not well controlled," and he also has a history of hypertension.  Id.  Dr. Chen stated that "[h]is history and examination are consistent with sensory polyneuropathy, most likely due to diabetes and hypertriglyceride."  Id. at 303.

### 4.    Records from 2013

In January 2013, Plaintiff went to Dr. Dhar, who reported that Plaintiff suffered from hypertension, diabetes and neuropathy and recommended that Plaintiff continue his current medicine and dietary regime.  Id. at 347.  Later that same month, Plaintiff visited Dr. Chen, who stated that, "[s]ince his last visit, there has been no significant changes in his symptoms" of "numbness and burning in feet."  Id. at 294.  The doctor observed that, "[a]fter he walks a long distance, he started to feel burning sensation in his feet and he has to sit down."  Id.  Dr. Chen opined that Plaintiff suffers "large fiber neuropathy, likely diabetic and hypertriglyceride neuropathy," but he is considered "stable."  Id. at 297.  Dr. Chen recommended taking Lyrica, as well as exercise and weight control.  Id.

In February 2013, Plaintiff visited Charles Francis, M.D. ("Dr. Francis"), who is a cardiologist.  Id. at 287-289.  The doctor observed that Plaintiff has a "normal appearance, healthy appearing, and obese."  Id. at 287.  In addition, he stated that Plaintiff suffered from hypertension, hyperlipidemia and diabetes.  Id. at 288.  At the conclusion of the visit, Dr. Francis recommended that Plaintiff continuing taking the prescribed medications with only minor adjustments to dosage.  Id.   That same month, Plaintiff saw Dr. Dhar, but the visit was unremarkable, and the doctor instructed that Plaintiff continue to take his medication and maintain his diet.  Id. at 340-341.

Plaintiff saw Dr. Francis again in March 2013, and the doctor observed that "[Plaintiff] stated he is doing fine," and "[h]e tries to exercise but not much and has gained a few pounds in the last few months." Id. at 280. Dr. Francis also noted that Plaintiff suffered from hypertension, and he stated: "Extensive education provided including diet and exercise." Id. at 282. Furthermore, Dr. Francis made a slight adjustment to the dosage of Lipitor to help with Plaintiff's hyperlipidemia. Id. That same month, Plaintiff visited Dr. Dhar, who advised Plaintiff to talk to his cardiologist about his hypertension, since that doctor was administering the blood pressure medications. Id. at 336. Dr. Dhar also noted that Plaintiff complained about pain in his thumbs because of diabetic neuropathy. Id. In April 2013, Plaintiff visited Dr. Dhar again, who reported that Plaintiff's blood pressure was "better controlled," and he recommended that Plaintiff "[continue] current regime. low saw diet, encouraged to lose weight. see nutritionist." Id. at 327-329.

In May 2013, Plaintiff saw Dr. Chen, his neurologist, and she noted that "[h]e cannot walk for a long distance because of the burning sensation in his feet and he has to sit down." Id. at 290. She also noted that Plaintiff suffered from "[s]mall fiber neuropath, etiologies: DM, hypertriglyceridemia," but she stated that Plaintiff was "stable." Id. at 293. She recommended that Plaintiff continuing taking Lyrica. Id. That same month, Plaintiff visited Liliana Cohen, M.D. ("Dr. Cohen"), a cardiologist, who stated that Plaintiff's hypertension was "[c]ontrolled" and recommended "diet and exercise," as well as taking Lopressor, Lisinopril and Chlorthalidone. Id. at 278. Dr. Cohen observed that Plaintiff had hyperlipidemia, and she readjusted his dosage of Lipitor. Id. With respect to his neuropathy, Dr. Cohen noted that "[Plaintiff] gets LE paresthesia which is limiting his ability to exercise," but, otherwise, "[h]e states he is doing fine." Id. at 276.

Also in May 2013, Plaintiff visited Barbara Greenspan ("Greenspan"), a nutritional therapist, since Plaintiff reported weight gain.  Id. at 313.  Greenspan noted that Plaintiff has diabetes mellitus and hyperlipidemia, and that he experiences "problems including neuropathy of his feet, which prevents him from walking long distances."  Id.  According to Greenspan, she told Plaintiff to "[l]imit carbohydrate intake to 45-50% of total calories evenly distributed throughout the day.  Limit caloric intake to promote weight loss.  Limit total fat intake to less than 30% of calories; limit saturated fat to less than 7% of calories."  Id. at 314.

In June 2013, Plaintiff visited Greenspan again, and she encouraged Plaintiff "to maintain small frequent meals and to continue recording his intake.  Pt encouraged to read food labels for carb and fat content.  He was encouraged to avoid skipping meals to obtain better blood sugar control.  Pt to restrict his intake of sweets and avoid sugary drinks/desserts."  Id. at 311.

**c.**     **Review of Testimonial Record**

    **1.**     **The September 2013 Hearing**

Plaintiff testified that, at the time of the hearing, he was 5' 9" and 249 pounds.  Id. at 49.  Plaintiff also stated that he attained a General Educational Development ("GED") certificate, and that he has previously worked as a construction worker and a cook.  Id. at 30-32.  With respect to his disabilities, Plaintiff testified that he has high blood pressure, but he takes medication to control it.  Id. at 33-34.  Plaintiff stated that he has diabetes, but he is prescribed Metformin to treat the symptoms.  Id. at 32-33.  Although he takes medication for the diabetes, Plaintiff stated that "[s]ometimes when I bend down I get very dizzy...."  Id. at 33.

In addition, Plaintiff testified that he was diagnosed with neuropathy "that's due to diabetes."  Id. at 34.  According to Plaintiff, his diabetic neuropathy causes numbness and pain in his feet and hands.  See id.  He explained, "I feel like I got sand in there.  Right now I feel like

8

sand is like halfway up my shoe." Id.  He continued, "if I do stand for an extended period of time[, the neuropathy] gets to be like a big grip that was crushing my bones, like after I sit down.  And when I was standing up I couldn't stand on it."  Id.  Plaintiff stated that he also experiences neuropathy in his hands, specifically his right thumb, as well as his thigh.  Id. at 35-36.  Plaintiff testified that he visits a neurologist, who prescribed him medication that helps with the pain and the burning and pulsating feeling.  Id. at 39-40.

As a result of his impairments, Plaintiff testified that he has a hard time picking up heavy objects with his hands.  Id. at 36.  For example, Plaintiff explained, "I tried to pick up a frying pan when… I was making dinner… and usually I just grab it in one hand and, you know, toss whatever…. [But] I had to use two hands because it's like I got muscles but they're not working."  Id. at 45.  With respect to his abilities to walk, Plaintiff stated that he experiences a "burning" sensation that is located between his toes and his ankles.  Id. at 38.  Before experiencing that sensation, Plaintiff testified that he "used to walk like two, three miles a day, usually," but "[n]ow [he] couldn't do a mile" because his feet "start throbbing, they start pulsating."  Id.  Nevertheless, Plaintiff stated that he can stand for "[a] couple hours, like one or two hours" before he experiences pain.  Id. at 39.

### 2.      The April 2014 Hearing

At the beginning of the hearing, the ALJ explained that he asked Meola,[1] the vocational expert, to answer vocational interrogatories, id. at 54, which state in pertinent part:

> 7. Assume a hypothetical individual who was born on November 19, 1960, has at least a high school education and is able to communicated in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6.   Assume further that this individual has the residual

---

[1] Meola testified that he holds a master's degree in vocational rehabilitation counseling, and that he is "certified as a rehab counselor and licensed by the State of New Jersey as such."  Id. at 54. Plaintiff's counsel did not object to Meola's qualifications to render an opinion.  Id.

functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except

■ He can walk no more than two hours in a normal eight hour workday; and

■ He can only occasionally climb.

…

10. Could the individual described in item #7 perform any unskilled occupations with jobs that exist in the national economy?

Id. at 239-240.  In his answers, Meola determined that Plaintiff is capable of performing the

following unskilled, light jobs: (i) assembler, marking devices – Dictionary of Occupational Titles

("DOT") No. 733.687-010; (ii) eyelet-machine operator – DOT No. 699.685-018; and (iii) labeler

– DOT No. 920.687-126.  Id. at 243-248.

Against that background, Meola testified that "light work is defined in two different ways

by the DOT.  One is that it does require a person to stand and walk for up to six hours in the course

of an eight-hour day or, and/or that the person would be sitting and using their hands and/or feet

in rapid movement in succession."  Id. 55-56.  Meola testified that "stand and walking and lifting

more than 10 pounds make the jobs, usually make the jobs light."  Id. at 56; see id. at 59.  However,

he continued, "the fact that a person is only able to sit or stand and walk for two hours would

certainly limit him to the jobs that would clearly fit the second part of that definition rather than

the first part of the definition."  Id. at 56.  Meola further stated that those jobs that Plaintiff can

perform, i.e., assembler, eye-let machine operator and labeler, "are done from essentially,

primarily a seated positon…."  Id. 58.  Meola further stated, for example, that a sewing machine

operator is "someone that will sit most of the day but because they're using their hands and feet in

rapid succession, it's considered light work activity."  Id. at 57.

At the conclusion of the hearing, Plaintiff's counsel stated that "[i]t's our position… that

both standing and walking are compromised by the claimant's diabetic neuropathy….  And that

the grid rule pertaining to sedentary work would be more appropriate to his scenario" than light

work.  Id. at 62.  Nevertheless, Plaintiff's counsel acknowledged that Plaintiff's case was a close call: "So we've got an individual, Mr. Gullace who, if he's limited to sedentary [work], would be found disabled.  If he could do light [work] he's not disabled.  He's somewhere in between, and we have to figure out which [one] he is closer to."  Id. at 58.

c.      **Review of the ALJ's Findings**

The ALJ issued his written decision on May 7, 2014.  See id. at 10-20.  The ALJ concluded that "the claimant has not been under a disability within the meaning of the Social Security Act from July 1, 2010, through the date of this decision."  Id. at 13.  In reaching that determination, the ALJ found that Plaintiff was not engaged in substantial gainful activity since his alleged disability onset date, and that Plaintiff suffered from the following severe impairments: diabetes mellitus, diabetic neuropathy, hypertension, hyperlipidemia, and obesity.  Id. at 15.

However, the ALJ concluded that Plaintiff "[did] not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments…." Id. at 16.  The ALJ reasoned that Plaintiff's diabetes mellitus did not cause more serious ailments, including gangrene and amputation or seizures, and as such, his "diabetes mellitus does not meet or medically equal the requirements of Medical Listing 9.00 or any other appropriate medical listing."  Id.  The ALJ further reasoned that, although there is no specific medical listing for obesity, he evaluated the effects of that impairment to determine whether obesity, in combination with other impairments, increased Plaintiff's functional limitations.  Id.  The ALJ concluded that obesity did not do so.  Id.

In connection with the residual functional capacity determination, the ALJ engaged in a thorough review of Plaintiff's function report, which was attached to his applications, as well as the objective medical records.  Id. at 17-18.  After considering all of that evidence, the ALJ

11

determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFS 404.1567(b) and 416.967(b) except he can walk no more than two hours in a normal eight hour workday and he can only occasionally climb." Id. at 17.  The ALJ specifically reasoned, in pertinent part:

> In sum, the undersigned finds that the residual functional capacity presented herein is supported by the objective medical evidence contained in the record.  The record reflects that the claimant has a limited work history….  Although he is noted to suffer some physical limitations due to his diabetes and diabetic neuropathy, the record also reflects that he is not totally disabled from all work activity.  The record reflects that in 2012, he was working summer jobs…. His treatment notes reported that his gait and station were normal and his hypertension was noted to be under control…. Even the claimant's testimony is inconsistent with a claim for total disability.  He testified that he can stand for a couple of hours and his examinations fail to show complete disability.  Although the undersigned finds that prolonged walking may aggravate his condition, the undersigned finds no basis for any limitations greater than those imposed above.

Id. at 18.  In sum, the ALJ found that the objective medical evidence, along with Plaintiff's own testimony, did not support the finding that Plaintiff was completely disabled, but rather, Plaintiff is capable of performing a job that requires him to sit for most of the workday, with some pushing and pulling of arm or leg controls, and that he cannot walk more than two hours and he can only occasionally climb.  See id. at 18.

The ALJ then concluded that Plaintiff was not able to perform his past work, i.e., as a cook and a construction worker, and that, based on the testimony of Meola, Plaintiff was able to perform the occupations of "Assembler, Marking Devices," "Eyelet-Machine Operator" and "Labeler."  Id. As such, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and thus, he is not disabled.  Id. at 19, 20.

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a

12

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…."  42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability.  Id. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."  Id. at § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not have a severe impairment is not considered disabled.  Id. at § 404.1520(c); see Plummer, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. pt. 404, subpt. P., app. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  See id. at § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the

14

ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

III. **DISCUSSION**

Plaintiff makes three arguments on appeal as to why the ALJ's disability determinations were unsupported by substantial evidence. First, Plaintiff argues that the ALJ erred by not adequately considering Plaintiff's obesity alone, or in combination with his other impairments, at

step three and each subsequent step of the analysis, pursuant to Social Security Ruling ("SSR") 00-3P, 2000 SSR LEXIS 5.  Second, Plaintiff contends that the ALJ erred in his formulation of the RFC, since the ALJ "engag[ed] in a blanket recitation of the evidence followed by an announcement of plaintiff's RFC," see Pl.'s Br. at 15, and that there is insufficient evidence in the record to support the conclusion that Plaintiff is capable of unskilled light work.  Finally, Plaintiff maintains that the ALJ erred by discrediting Plaintiff's subjective symptoms of pain and its functional effects.  The Court will address each argument, in turn.[2]

**a.      Whether the ALJ Properly Considered Plaintiff's Obesity**

Obesity was removed from the Impairment List in 1999.  See Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009); see also Moore v. Comm'r of Soc. Sec., No. 11-5369, 2013 U.S. Dist. LEXIS 32982, at *6-7 (D.N.J. Mar. 8, 2013).  Although an obese claimant is no longer automatically entitled to benefits, the Third Circuit has recognized that "this did not eliminate obesity as a cause of disability." Diaz, 577 F.3d at 503.  To the contrary, the court explained:

> [SSR 00-3P] replaced an automatic designation of obesity as a Listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant: "We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment."

Id. (quoting 2000 SSR LEXIS 5, at *12).  In 2002, the Commissioner promulgated SSR 02-1P, 2002 SSR LEXIS 1, and 67 Fed. Reg. 57859 (Sept. 12, 2002), which superseded SSR 00-3P.  Diaz, 577 F.3d at 503.  However, the Third Circuit clarified that SSR 02-1P did not materially alter the

---

[2] The Court notes that Plaintiff does not challenge the following decisions: (i) that Plaintiff was not engaged in substantial gainful activity since July 1, 2010; (ii) Plaintiff suffered from diabetes mellitus, diabetic neuropathy, hypertension, hyperlipidemia, and obesity; and (iii) Plaintiff is not capable of performing his past relevant work.  In addition, assuming that he is capable of light work, Plaintiff does not challenge Meola's determination that Plaintiff can be an assembler, eyelet machine operator and labeler.  Accordingly, this Court need not address those issues here.

guidance in SSR 00-3P, which provides that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." Id. (quoting 2000 SSR LEXIS 5, at *12). Indeed, SSR 02-1P provides similar guidance as SSR 00-3P:

> [W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

2002 SSR LEXIS 1, at *2-3. Citing SSR 02-1P, the Third Circuit in Diaz has stated that "an ALJ must *meaningfully consider* the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function *at step three and at every subsequent step*." Diaz, 577 F.3d at 504 (emphasis added). To be meaningful, an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004); see Diaz, 577 F.3d at 504 (stating that an ALJ is not required to "employ particular 'magic' words" in his decision); see also Cooper v. Comm'r of Soc. Sec., 563 Fed. Appx. 904, 911 (3d Cir. 2014).

In the instant matter, the record reflects that Plaintiff is 5'9" and his weight fluctuates between 249 and 270 pounds. See A.R. at 49, 265. In his written decision, the ALJ found that Plaintiff was obese, and that his obesity was a severe impairment. Id. at 15. Ultimately, the ALJ found that none of Plaintiff's impairments, or a combination of these impairments, met the Listing. Id. The ALJ provided the following analysis with respect to whether Plaintiff's obesity alone, or in conjunction with his other impairments, equaled the severity of one of the listed impairments:

> It is noteworthy that although there is no specific medical listing regarding obesity, the undersigned has evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 02-1P… [which] states: "However, we will not

make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record."  Accordingly, the undersigned has fully considered obesity in the context of the overall record evidence in making this decision.

Id. at 16.  Although he cited to SSR 02-1P, the ALJ stated, in a conclusory fashion, that he considered all of the relevant evidence in making his decision, but he did not actually articulate any evidence in connection with Plaintiff's obesity.  Furthermore, the ALJ does not expressly find that Plaintiff's obesity, along with his other impairments, did not equal the severity of a listed impairment.  Thus, without a discussion of the relevant evidence regarding obesity, or an explanation of his reasoning, the ALJ has failed to provide meaningful consideration of Plaintiff's obesity alone, and in combination with his diabetes mellitus, diabetic neuropathy, hypertension and hyperlipidemia.  See Diaz, 577 F.3d at 504 ("Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient."); see also Moore, 2013 U.S. Dist. LEXIS 32982, at *13 ("A blanket statement that an ALJ has considered evidence is not the same thing as an ALJ actually discussing the evidence…").  Therefore, the Court finds that the ALJ did not adequately explain his consideration of Plaintiff's obesity in connection with the step three analysis.

With respect to step four, the ALJ must consider the claimant's residual functional capacity and past relevant work.  See Lippincott v. Comm'r of Soc. Sec., 982 F. Supp. 2d 358, 376 (D.N.J. 2013).  In the instant matter, the ALJ found that Plaintiff "has the residual functional capacity to perform light work… except he can walk no more than two hours in a normal eight hour workday and he can only occasionally climb."  A.R. at 16.  In reaching that determination, the ALJ almost exclusively discussed the effects of Plaintiff's diabetes mellitus, diabetic neuropathy and hypertension on his ability to function in the workplace.  Id. at 17-18.  With respect to Plaintiff's

obesity, the ALJ made one comment: "[t]he record reflects that the claimant has a history of hypertension and obesity since January 2010." Id. at 17.  The ALJ did not provide any further explanation about Plaintiff's obesity, and its impact on his residual functional capacity.  Although the ALJ concluded that Plaintiff's obesity was a severe impairment, during his RFC analysis, he did not provide an explanation as to whether Plaintiff's obesity had an adverse effect on his ability to perform unskilled light work.

While Defendant does not concede that the ALJ did not properly consider Plaintiff's obesity, she argues, instead, that "remand" on that basis would be futile, because "Plaintiff points to no evidence that his obesity, in connection with his other alleged impairments, satisfies the standard described above," i.e., that Plaintiff has the burden of presenting evidence that a specific impairment, or a combination of impairments, equals all of the criteria of a listed impairment. Def.'s Br. in Opp. at 5-6.  In other words, Defendant argues that the ALJ's error in that regard is harmless.

Under the harmless error rule, courts are not required to remand an action when the error committed does not affect the outcome of the case.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("We… conclude that a remand is not required here because it would not affect the outcome of the case."); see also Woodson v. Comm'r of Soc. Sec., 661 Fed. Appx. 762, 766 (3d Cir. 2016); see Holloman v. Comm'r of Soc. Sec., 639 Fed. Appx. 810, 814 (3d Cir. 2016). Importantly, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).  Citing the Supreme Court in Shinseki, the Third Circuit has declared that the attacking party must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to his claims," including "affirmatively point[ing] to specific evidence that demonstrates he [or she] should succeed...."

Woodson, 661 Fed. Appx. at 766 (citing Shinseki, 556 U.S. at 409).  Indeed, in order for an error

to be harmful, the attacking party must affirmatively identify evidence that the impairment imposes

additional limitations on his or her functional capabilities.  See Rutherford, 399 F.3d at 553 (stating

that the plaintiff only made "an assertion that her weight makes it more difficult for her to stand,

walk and manipulate her hands and fingers. That generalized response is not enough to require a

remand...."); see also Stockett v. Comm'r of Soc. Sec., --- F. Supp. 3d ---, 2016 WL 6275163, at

*16 (D.N.J. Oct. 26, 2016) (holding that the ALJ's error was harmless, "as there is no evidence

that Plaintiff's [impairment], if credited by the ALJ, would have impacted the RFC determination,

given that [the plaintiff's doctor] assigned no limitations to Plaintiff stemming from the

diagnosis.").

        Plaintiff contends that, had the ALJ properly considered Plaintiff's obesity in combination

with his other impairments, it would undoubtedly lead to the conclusion that Plaintiff was either

disabled at step three, or that Plaintiff's obesity would impact the ALJ's RFC determination.

Without any medical evidence, Plaintiff surmises that his diabetic neuropathy, together with his

obesity, affects his functional capabilities, since "[t]he fact that those feet must carry a 260 pound

frame further limits his ability to stand and walk to even less than 2 hours and thus less than

sedentary work."  Pl.'s Br. at p. 14.  However, advancing this argument by itself fails to meet the

burden.  First, other than conclusory statements, Plaintiff does not explain how the ALJ's lack of

meaningful consideration as to Plaintiff's obesity would change any of the ALJ's analysis.  Rather,

without any supporting medical evidence, he argues that the ALJ would have inevitably come to

a different outcome had he considered Plaintiff's obesity.  That, alone, is not enough.  See

Woodson, 661 Fed. Appx. at 766 (holding an error harmless because the plaintiff "only says in

very vague terms that an actual discussion of his impairments would lead to the conclusion that he

20

was disabled...."). Second, and relatedly, Plaintiff does not affirmatively point to any evidence that his obesity actually imposed additional limitations on his ability to function in the workplace. See id. In fact, his medical records reflect a contrary conclusion; it is clear that Plaintiff was merely instructed to control his weight, through diet and exercise, in an attempt to mitigate the symptoms caused by hypertension, hyperlipidemia, diabetes mellitus and diabetic neuropathy. See, e.g., A.R. at 278, 282, 297, 311-314, 370. None of the doctors found that Plaintiff's obesity burdened his ability to perform activities, work or otherwise. Because Plaintiff has merely offered a generalized response that his weight makes it harder for him to stand and walk, he has failed to meet his burden, and as such, this Court finds the ALJ's error to be harmless.[3] See Rutherford, 399 F.3d at 553; see, e.g. Vargas v. Colvin, No. 15-2502, 2017 U.S. Dist. LEXIS 4837, at *12 (D.N.J. Jan. 11, 2017) (holding that remand is inappropriate "given the absence of any medical evidence in the record indicating that [the plaintiff's] obesity has affected his functioning in any way.").

**b.     Whether the ALJ Properly Determined Plaintiff's RFC**

At the outset, the Court has already found that the ALJ's lack of explanation in regard to Plaintiff's obesity is harmless error. Relying on Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) and Burnett, Plaintiff argues that the ALJ must consider and explain the reasons for discounting evidence in making his residual functional capacity determination. Specifically, Plaintiff contends

---

[3] This case is distinguishable from other cases where the court found remand appropriate, because, in those cases, the plaintiff presented evidence in the administrative proceeding that could have potentially changed the outcome of the case. See, e.g., Halsey v. Comm'r of Soc. Sec., No. 15-6311, 2016 U.S. Dist. LEXIS 147987, at *14 (D.N.J. Oct. 25, 2016); Moore, 2013 U.S. Dist. LEXIS 32982, at *12-13.

that the ALJ "simply recites the evidence and then announces a finding."[4]  Pl.'s Br. at p. 16.  The Court disagrees.

"In making a residual functional capacity determination, the ALJ must consider all evidence before him," and must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  Burnett, 220 F.3d at 121; see Cotter, 642 F.2s at 704; see also Goldberg v. Colvin, No. 13-6055, 2015 U.S. Dist. LEXIS 31012, at *24-25 (D.N.J. Mar. 13, 2015) (stating that the ALJ must consider both medical and non-medical evidence).  However, this rule does not require an ALJ to explicitly discuss every piece of relevant evidence in his decision.  Fargnoli v. Halter, 247 F.3d 34, 42 (3d Cir. 2001); see Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Ultimately, "[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (2012) (quoting Fargnoli, 247 F.3d at 38).

In the instant matter, the ALJ determined that Plaintiff is unable to perform his past work as a chef and a construction worker, see A.R. at 18, but he concluded that Plaintiff had "the residual functional capacity to perform light work... except he can walk no more than two hours in a normal eight hour workday and he can only occasionally climb."[5]  Id. at 16.  The ALJ first examined the

---

[4] Plaintiff does not argue, for example, that the ALJ ignored probative evidence in the record, or that he improperly weighed some evidence at the expense of other evidence.  Indeed, in connection with this argument, Plaintiff does not cite to any evidence in the administrative record.  See Pl.'s Br. at 14-18.  Instead, Plaintiff broadly declares that "the ALJ is duty-bound to articulate a defensible, rational, evidentiary case regarding the crucial issue of what the claimant can still do despite his impairments and what he cannot do because of those impairments."  Id. at 15.

[5] The regulation defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking

function report, which contains probative, non-medical evidence about Plaintiff's functional capabilities. Specifically, the ALJ found that Plaintiff enjoys shopping, playing games and exercising, which includes going on daily walks. See id. at 17. In addition, he found that Plaintiff reported "no difficulties with personal care and he reported being able to do cleaning and laundry." Id. While he is able to perform daily tasks, the ALJ noted that Plaintiff "reported difficulty at times with standing due to flare-ups in the nerves on his feet and he reported pain with climbing and walking," but he stated that Plaintiff also "reported being able to walk about a mile." Id. In addition, the ALJ determined that Plaintiff suffers from diabetes, high blood pressure and neuropathy. Id.

Next, the ALJ reviewed the medical records. The ALJ found that "[t]he record reflects that [Plaintiff] has a history of hypertension and obesity since January 2010." He further found that, in February 2011, Plaintiff was taking medication to maintain his diabetes mellitus, and "his gait was normal and no swelling or numbness was noted in his upper or lower extremities." Id. The ALJ determined that, in August 2011, "[Plaintiff] was noted to be doing well," and that he was "doing summer jobs due to loss of his regular work." Id. Nevertheless, the ALJ observed that, starting in February 2012, "[Plaintiff] noted numbness and pain in his feet," and that "[Plaintiff]

---

or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). During the supplementary hearing, Meola explained that "light work is defined in two different ways by the DOT." A.R. at 55. He testified that, normally, light work requires "a person to stand and walk for up to six hours in the course of an eight-hour day…." Id. However, he explained that Plaintiff, based on his limitations, falls into the second part of the definition, which requires a person to be "sitting and using their hands and/or feet in rapid movement in succession." Id. 55-56.

reported continuing foot pain throughout the summer of 2012, but no gait disturbance was observed," nor was there any swelling in his extremities.  Id.  The ALJ explained that Plaintiff "was diagnosed with diabetic neuropathy" in September 2012.  Id.  The ALJ observed that, although Plaintiff's doctors directed him to engage in diet and exercise, in early May of 2013, Plaintiff "did not follow the advised plan."  Id.  However, the ALJ found that, "by late May of 2013, he noted complying with the plan and having lost weight.  He reported being compliant with his diet and prescribed medications and he noting he was seeing a nutritionist."  Id.  While he continued to experience tingling in his feet and hands, which limited his ability to exercise, the ALJ reported that Plaintiff did not have any swelling in his extremities, and he had a full range of motion in his joints.  Id.

Based on both the medical and non-medical evidence, the ALJ made the following remarks:  "Although he is noted to suffer some physical limitations dues to his diabetes and diabetic neuropathy, the record also reflects that he is not totally disabled from all work activity," since "he was working summer jobs" in 2012 and "his treatment notes reported that his gait and station were normal and his hypertension was noted to be under control."  Id.  The ALJ concluded that Plaintiff's testimony was inconsistent with a claim for total disability, because "[h]e testified that he can stand for a couple of hours and his examinations fail to show complete disability."  Id.  However, the ALJ determined that "prolonged walking may aggravate his condition"  Id.

Here, the Court finds no reason to disturb the ALJ's residual capacity determination, since he considered the probative evidence and he provided detailed explanations. Consistent with the medical evidence, the ALJ recognized that Plaintiff suffered from various impairments, including neuropathy, which impaired his ability to stand and walk.  However, the ALJ correctly determined that the overwhelming evidence in the record provides that Plaintiff's impairments were

24

controlled, and that his doctors were managing his symptoms through medication, diet and exercise.  In addition, there is substantial evidence in the record, including Plaintiff's own testimony, that Plaintiff is still able to walk "long" distances before he experiences a burning sensation in his feet.  See, e.g., A.R. 201, 294, 290, 299, 313.  Indeed, Plaintiff stated, in his function report, that he can walk "1 mile maybe more" before he needs to stop and rest, and that he is able to resume walking within ten minutes.  Id. at 201.  With respect to his ability to stand, Plaintiff testified that he experiences pain when he stands for an extended period of time, see id. at 34, but he can stand for "[a] couple hours, like one or two hours" before his feet begin to hurt. Id. at 39.  Furthermore, during the administrative proceeding, Plaintiff presented no evidence that he cannot sit for extended periods of time.  Indeed, there seems to be no limitation in connection with sitting.  Accordingly, the Court concludes that the ALJ's RFC findings are supported by substantial evidence, and he has provided adequate rational for the determination that Plaintiff can perform light work with the exception that he can walk no more than two hours in a normal eight hour workday, and he can only occasionally lift.

**c.      The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff next argues that the ALJ failed to adequately consider Plaintiff's credibility in connection with his subjective complaints of pain.  In particular, Plaintiff argues that he suffers from debilitating pain in his hands and feet, and that he can no longer lift heavy objects.  For instance, Plaintiff points to the following testimony to support his position:  "I tried to pick up a frying pan…, [but] I had to use two hands because it's like I got muscles but they're not working." Id. at 36.  The Court finds Plaintiff's argument unpersuasive.

Credibility determinations are entitled to substantial deference on appeal.  See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's

credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor."); see also Izzo v. Comm'r of Soc. Sec., 186 Fed. Appx. 280, 286 (3d Cir. 2006) (stating that "a reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").   When making credibility determinations, the ALJ must consider "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). Rejection of subjective testimony must be based on substantial evidence in the record. See VanHorn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

In the instant matter, the ALJ considered Plaintiff's subjective complaints in reaching the residual functional capacity determination.  Specifically, the ALJ found, based on the evidence in the record, including Plaintiff's own testimony, that he "suffer[ed] some physical limitations due to his diabetes and diabetic neuropathy," including "that prolonged walking may aggravate his condition."  See A.R. 18.  But, the ALJ further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Id. at 17.  The Court finds no error in the ALJ's determination.  Plaintiff's own statements belie his argument that his disabilities have rendered him incapable of work.  In his function report, Plaintiff stated that he has no problem performing household tasks, specifically cooking.  Id. at 197-198. In addition, Plaintiff testified that he is able to stand and walk for extended periods of time.  See id. at 38.  Furthermore, Plaintiff does not point to, nor has this Court found, any objective medical evidence that Plaintiff experienced issues with his ability to hold heavy objects, such as a frying pan.  Accordingly, the Court accords great deference to the ALJ's credibility determination of

Plaintiff's subjective testimony and does not find remand to be warranted on this point.  See, e.g., Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.  In view of the evidence presented in the record and of the ALJ's 'opportunity to observe the demeanor and to determine the credibility of the claimant,' these findings are entitled to 'great weight' and should be upheld.") (internal quotation marks and citation omitted).

## IV.   CONLCUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence in the record.  Accordingly, the ALJ's decision is affirmed, and Plaintiff's Complaint is dismissed.

DATE: February 23, 2017

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge